## Case No. 12,033.

### ROOSEVELT v. The C. H. FROST.

[MS. (Scr. Bk. Clerk's Office. Phila.).]

Circuit Court. E. D. Pennsylvania. Oct. 27, 1859.

MARITIME LIENS — REPAIRS IN PORT OF ANOTHER STATE—STATE STATUTES—FEDERAL COURTS.

[1. The maritime law will give no lien, as against an innocent purchaser, upon a vessel owned in Philadelphia, for repairs made on several different occasions in New York by libellants, who themselves lived in Philadelphia, dealt personally with the owner, kept a running account with him. made part payment in cash, and received mercantile securities for the balance.].

[2. It seems that state laws cannot impose a maritime lien upon a vessel trading on the high seas or navigable waters, which will adhere to her after she has left the jurisdiction of that state, or which can be recognized and enforced by the federal courts.]

[Appeal from the district court of the United States for the Eastern district of Pennsylvania.]

[This was a libel by Roosevelt and others against the brig C. H. Frost to enforce an alleged lien for repairs. The district court dismissed the libel (case unreported), and the libellants appealed.]

GRIER, Circuit Justice. This case was very properly dismissed, for want of jurisdiction, by the district court. The plaintiffs claim to have made repairs to the brig Frost on two different occasions, when she was in the port of New York. The owner of the brig resided in Philadelphia, within speaking distance of the libellants. The libellants treated with him personally. He paid their account, in part, in cash, and gave bills and other mercantile securities for the balance. Submitting, for the present, to the frequent dicta in our reports, that these United States do not form one government and people, but is a mere league of independent states, foreign to each other, and consequently that the law of maritime liens, as between foreign ports, is to be enforced; nevertheless, I will hold them at all times to be "strictissime juris," as all secret liens should be treated. A master in a foreign port without means to repair his vessel is permitted to hypothecate the vessel in order to enable him to proceed on his voyage. He may raise money by a bottomry bond, or, if persons be found willing to furnish his repairs and supplies, they are allowed a privilege or lien on the vessel. The lien should be prosecuted as soon as possible after the vessel has earned freight, and especially if the vessel has returned to the port after having earned freight. should the creditor be presumed to have abandoned his secret privilege, if not then prosecuted, much more if he keeps a running account and deals with the owner (as in this case) will the presumption be conclusive that there was no such necessity as required this secret privilege to be allowed.

One who has a clear privilege or lien by law may not necessarily lose it by accepting notes or bills for his account. But the question here is, not whether the lien is lost by their acceptance, but whether the necessity which gives the privilege ever existed. For my views on this subject generally, I will refer to my opinion in the case of Whitman v. The George Evans [unreported]. I would say, therefore, that, whether the dogma be true or not, that the ports of New York and Philadelphia are foreign to one another, it

must be a very peculiar case of necessity in which a master would be permitted to bottomry his ship in New York, when the owner could be spoken to in ten minutes. Much less can the maritime law be invoked to inflict this lien on a vessel in the hands of a bona fide purchaser, where the libellants have dealt personally with the owners, kept a running account, and finally have received his mercantile securities for the balance unpaid. If the libellants insisted on better security, and wished to bind the vessel, the owner was present and could have hypothecated it by mortgage, if there was a necessity for any security or privilege on the vessel. The fact averred in the bill, that the libellants filed a lien under the laws of New York, is also a conclusive argument that libellants knew they had no privilege by the maritime law. If they have a remedy under the state law, let them pursue it in the state courts. States may impose liens on vessels while within their jurisdiction and enforce a remedy thereon. But such liens do not adhere forever to the vessel, nor after she has left the jurisdiction of the state. Much less can such privileges be enforced in courts of other states, or by those of the United States. If a coasting steamer on the lakes or the Atlantic coast could thus envelope herself in a web or tangle of conflicting secret liens for running accounts in every port she enters, without any great and pressing necessity, all property in such vessels would be insecure. I would not be understood to say (though without authority to the very point) that no state authority can impose a maritime lien upon vessels trading on the high seas or navigable waters which will adhere to the vessel after she has left the jurisdiction of that state, or which can be recognized by the courts of admiralty and be enforced by them abroad or at home.